THE DETROIT WESTERN TRANSIT & JUNCTION RAILROAD COM-
PANY v. WALTER CRANE.

*Condemnation proceedings — Challenges to jurors — Judicial knowledge—
Award of jury—Admission of evidence—Practice.*

In reviewing proceedings for the condemnation of lands, the Supreme
Court cannot consider any reasons against the confirmation of the
report of the jury except those which were presented to the lower
court.

In reviewing the action of a court in overruling a challenge to a juror,
no reasons for the challenge can be considered except those that were
given at the time it was made; error cannot be brought into the case
retrospectively.

When a party seeks a ruling on which to base an appeal, if it is wrong,
he cannot rely on the judge's private knowledge of facts, but must
bring them into the case in some authoritative and responsible form,
so that they may become a part of the record for the purposes of the
review.

A fund raised in Detroit by general contribution to aid in the building of
a railroad to Butler, Ind., was commonly known as the "Butler
bonus." But in proceedings to condemn land for a road to be leased
to the Butler road a court could hardly take judicial notice of what
the Butler bonus was for the purpose of sustaining a challenge to a
juror on the ground that he had subscribed thereto.

A subscriber to a railroad aid fund, who takes no stock in the road, ac-
quires no legal interest in another projected road from the fact
merely that it is to be leased to the road which he has aided.

A challenge to favor in proceedings to condemn land is properly over-
ruled if the judge knows at the time of nothing which would give
the juror a bias ; and if the challenger knows of facts which would
do so, it is not enough to present them for the first time as a reason
for refusing to confirm proceedings which have been long in pro-
gress at considerable cost, and in which the juror has taken part
without any showing of legal cause against his acting.

The award of the jury in proceedings to condemn lands for railroad uses
will not be set aside merely because of the admission of testimony
that would not have been admissible under strict legal rules, unless
it appears to have caused substantial injustice.

Where the jury in proceedings to condemn land for a railroad take all
measures that they would if they were personally concerned, to ac-

quire a knowledge of the value of the land and of the injury the road is likely to cause it, it is presumable that farther evidence as to the public importance of the work and as to amounts of compensation to other owners will no more influence their judgment than such evidence would if they were merely buying and selling.

Appeal from Wayne.    Jan. 18.—Feb. 27.

PROCEEDING to confirm the award of a jury in the condemnation of land.    Claimant appeals.    Affirmed.

*Henry C. Wisner, John Atkinson, Don M. Dickinson* and *Samuel T. Douglas* for appellant.

*Geo. V. N. Lothrop* for appellee petitioner.

COOLEY, J.    The regularity of proceedings to condemn lands for the purposes of a railroad is involved in this case. The road is local to the city of Detroit and its vicinity, and appears to be designed to connect other roads with a union depot for that city.    The lands of respondent which are proposed to be taken are a little below the city.    On the petition of the railroad company a jury was impaneled for the purposes of the condemnation, under the supervision of one of the circuit judges for the county of Wayne, and the jury, after taking a great amount of evidence which is before us in the printed record, made its report to the court September 5, 1882.    By this report it is found and determined that it is necessary to take the land for public use, that is to say, for the constructing and operating of the railroad of said company under its articles, and in and for a right of way for the same, and the damages or compensation which ought to be made to the respondent therefor is fixed at the sum of six thousand two hundred and seventy dollars.

On this report being filed an order was entered that the respondent show cause on a day named why it should not be confirmed.    The respondent appeared and showed for cause the following reasons :

"*First.* Benjamin Vernor, one of the jurors of the jury making such report, was interested in the building of petitioner's said road, and who, when called to sit on said jury,

was, on that ground, challenged by said respondent, but his challenge was overruled by the court. The facts relating thereto are shown by the affidavit of John Atkinson, hereto attached.

*Second.* That during the hearing of said matter before said jury such jury was not in charge of any officer, but dispersed and came together at their own convenience, as appears by the affidavit of John Atkinson above referred to.

*Third.* That during the hearing of said matter before such jury said petitioner introduced and put in evidence against the objection of this respondent a great amount of irrelevant and incompetent testimony," [some of which is specified].

These are the reasons assigned why confirmation of the report should not be had, and they are the only reasons which appear to have been suggested in that court. They are therefore the only reasons to be considered now and here.

1. The first objection to the confirmation arises upon the challenge to the juror Vernor. For the grounds of this we are referred to the affidavit of Atkinson, who states that " he acted as one of the counsel for the respondent on the trial of the above entitled cause, and was present at the impaneling of the jury therein; that Benjamin Vernor on being called as a juror was asked whether or not he had subscribed a sum of money towards the Butler bonus, and answered that he had subscribed and paid one hundred dollars; that thereupon he was challenged as an interested party by said respondent, which challenge was overruled, to which the respondent excepted."

This is the whole statement of what took place respecting the challenge of this juror at the time it was made and passed upon by the circuit judge. If the challenge was well taken, the reasons for it must be found in the facts here stated. No other facts could be put into the case afterwards to bring error retrospectively into the decision if it was not erroneous on the facts which were before the judge when he made it.

The question then is, whether having subscribed and paid a sum of money to what is called the Butler bonus made

the subscriber so far interested in a new local railroad pro-
jected at the city of Detroit that he was an incompetent
juror on a question of condemnation of land for such pro-
jected road. But what was the Butler bonus, and what
grounds had the circuit judge for an opinion or an inference
that participation in it made the participator interested in
this road? It is not shown to us that the Butler bonus was
explained to the circuit judge when the challenge was made,
or that he had any knowledge or information what it meant.
It will not be pretended that he could take judicial notice of
it; but if he could not, his ruling upon the challenge must
certainly have been correct.

In the affidavit to oppose confirmation, however, we
find what was the Butler bonus explained to the court, and
it appears to have been a large sum of money contributed
by the people of Detroit to the construction of a railroad
from the city of Detroit to Butler in Indiana. As the rais-
ing of such a sum of money by general contribution would
be likely to be a matter of public notoriety and attract a
good deal of attention, possibly it may have been assumed
when the challenge was made that the judge, who was a
resident of Detroit, would be familiar with all the facts and
would act upon his personal knowledge. The circumstance
that no legal showing was made of what the Butler bonus
was, would tend to give countenance to this suggestion. It
seems almost unnecessary to say, however, that when a
party desires a ruling with a view to take advantage of it
by appeal, if erroneous, it is not sufficient for him to rely
upon some private knowledge the judge may have of the
facts, but he must bring the facts into the case in some
authoritative and responsible form, so that they may become
a part of the record for the purposes of the review, as the
personal knowledge of the judge, not expressed in writing
for the purposes of the case, never can.

But the respondent is not advanced at all in the direc-
tion of showing error when he shows or assumes that the
circuit judge knew what was meant by the Butler bonus.
Apparently it is something having no connection whatever

with the road now projected, so that the suggestion that subscription to it makes the subscriber interested in the new road seems to be gratuitous. But the affidavit opposing the confirmation goes further and proceeds to explain how the one thing is connected with the other. The explanation, shortly stated, is that by various contracts which are set out or referred to, the road for which the bonus was raised has acquired the right to a perpetual lease of the projected new road, at an annual rental of seven per centum of its cost, and is thereby directly interested in the construction; its purpose being to obtain by means thereof access for its business to the union depot. This is the whole showing. The supposed interest of the juror then consists in the fact that he once made a gift towards the construction of a railroad, which railroad, by subsequent contracts, has obtained an interest in the proposed new road.

That this constitutes a legal interest, no one can pretend, for the juror took no stock for his gift. The challenge, then, must be considered a challenge to favor; and the logic of it is that because Mr. Vernor desired the construction of the Detroit & Butler road, and was willing to aid it by a gift, therefore he must desire the construction of a road subsequently projected which the Detroit & Butler road subsequently concludes to lease and use. But any such logic must assume that the donors to a road approve of whatever collateral projects its managers decide to enter upon; and it falls to the ground as baseless unless we can make that assumption. This seems a very violent assumption, and would often be very untrue to the facts.

But it is very manifest that upon this record we are not called upon to say whether such an assumption can or cannot be made. What we are to decide is whether the circuit judge committed any error in overruling the challenge made to favor, and he certainly committed none if he knew of no facts which should give the juror a bias. It does not appear that he knew of any such facts. It does not appear that the facts supposed to be calculated to affect the impartiality of the juror were either brought to the attention of

the judge by affidavit or admission, or that they were facts of public notoriety so that they might be supposed to have come to his knowledge as a citizen.   For the first time they appear to have been made known to him as a ground for refusing to confirm proceedings which had been a long time in progress and had cost a considerable sum of money, and in which the juror had participated without any legal cause being shown against it.   And at the time of thus making known the facts it was not pretended that they had newly come to the party's knowledge, and that for that reason he could not have presented them in due time.

The court then did not err in holding that the overruling of the challenge to Vernor was not a sufficient ground for refusing to confirm the report.

2. The second ground for opposing the confirmation, namely, that the jury were allowed to separate at will during the time when the case was in their hands, is not insisted upon on the hearing in this Court.

3. The third ground assigned in the circuit court was that the jury received "a great amount of irrelevant and incompetent testimony;" which is particularly specified in the objections filed to the confirmation.

We have examined the record in the light of these objections, and it seems highly probable that if the evidence had been taken under strict legal rules, some which was received would have been excluded.   This is true of that which was taken on both sides.   But we have shown in previous cases that we cannot set aside these awards for such a reason.   " When the law provided how the tribunal should be constituted for these cases, and prescribed the method to be observed, it obviously contemplated that the practice respecting the admission of testimony should be as simple as a due regard to substantial justice would permit.   It was not intended to leave the fate of the determination had in view to any fine-spun theories, or to the refinements which are not uncommon at the circuit; they were not supposed to be necessary to the fundamental purpose or beneficial working of inquests of this nature, and no provision was made

for the certain attendance of any one presumptively quali-
fied to deal with them.   The statute plainly assumes that
the jury may conduct the inquiry without the aid of any
legal expert, and under circumstances in which it would be
difficult if not impracticable to preserve technical or hair-
drawn questions in a shape to be reviewed.   And were the
niceties of nisi prius to be insisted on, the proceeding
would soon break down under the perplexities and embar-
rassments due to its own methods.   The conclusion to which
these and other considerations lead is that a very large dis-
cretion in admitting and rejecting testimony is left to the
jury or the attending officer when there is one, and that
when the case is brought here by appeal the award cannot
be disturbed on account of such decisions, unless it is fairly
evident, in view of the facts and circumstances, that the rul-
ing was not only inaccurate, but was a cause of substantial
injustice to the appellant in the matter of the result."
Graves, J. in *Mich. Air Line Ry. v. Barnes* 44 Mich. 222,
226 ; see also Campbell, J. in *Toledo, Ann Arbor & Grand
Trunk Ry. Co. v. Dunlap* 47 Mich. 456, 466.

It is not fairly evident in this case that any substantial
injustice has been done.   The jury appear to have acted
with great deliberation ; they examined the premises in per-
son, and informed their minds with all the light either party
saw fit to give them.   They made use of all the means to
acquire a knowledge of the value of the land and of the
injury the railroad was likely to do to it that they would
have availed themselves of had they been personally con-
cerned.   If they went further and took evidence that had no
legitimate bearing, it is presumable that it no more influenced
their judgment than the same evidence would if it had come
to them when acting merely as citizens buying and selling.
And this remark applies as well to the evidence to show the
public importance of the work as to that directed to the
amount of compensation.

None of the objections being well taken, the proceedings
must stand affirmed.

GRAVES, C. J. and MARSTON, J. concurred.