the one set up here have been sustained. The first was an English case decided in 1869, while the other was decided a few months since by the Supreme Court of New York. The doctrine of the English and the New York cases was followed, and the judgment of the Circuit Court was reversed with costs.

[See the cases of *Clay vs. Schwab,* 1 *Mich. Nisi Prius,* 168, and *Longwell vs. Day, Id.,* 286.—REP.]

---

THE PEOPLE *ex. rel.* ELI ROYCE *vs.* DANIEL GOODWIN.

Circuit Judges need not, necessarily, be residents of the Circuits for which they are elected.

*Quo Warranto.*

*Opinion by* CAMPBELL, C. J.—This was a proceeding to determine the right of Hon. Daniel Goodwin to exercise the functions of Circuit Judge of the Eleventh Judicial Circuit. Having pleaded his election and the determination by the Board of Canvasers in his favor, the Attorney General filed several replications, presenting a number of questions supposed to be material. These were demurred to except one, that offered an issue to the country on the question whether the respondent received the largest number of votes.

The principal question was whether the Constitution requires a Circuit Judge to reside in his Circuit. The provision relied on is section 22 of Art. 6, which declares that "when a Judge shall remove beyond the limits of the jurisdiction for which he was elected, or a Justice of the Peace from the township in which he was elected, or by a change in the boundaries of such township shall be placed without the same, they shall be deemed to have vacated their respective offices." By section seven it is provided that no alteration or increase of Circuits shall have the effect to remove a Judge from office.

Section 22 plainly declares that a Judge who resides in the Circuit shall, if he remove from it, vacate his office, but it does not in terms require him to reside within it, or prevent the election of one who resides elsewhere, and section seven contemplates the possibility of legislation which may put his residence outside of it.

In some offices the necessity of residence arises from their very nature, and if the Constitution were silent upon this subject, only legislative interposition, and possibly not even that, could do away with the necessity of residence. Such are town officers and the ministerial officers of counties. The Constitution says nothing concerning most of these officers, and only provides for a special emergency concerning Justices. Probate Judges are included in the prohibition of section 22, and if that implies the necessity of residence, then no further provision would be necessary to compel it. But by section 13 of article 6, it is declared concerning each Judge of Probate, that ": he shall be elected by the electors of the county in which he resides." So by section 4 of article 5, Senators and Representatives are required to be qualified electors in the respective counties and districts which they represent. At the common law, the electors of any precinct might choose their representatives at large. It seems clear that in cases which were doubtful it was deemed necessary to declare distinctly that incumbents should be residents  There being no such declaration in regard to Circuit Judges, the restriction, if it exists, must be found in the necessary incidents of the office or in some binding usage.

The Judges, when the Constitution was adopted, performed the same functio. s which had before devolved upon the Judges of the Supreme Court, who were elected or appointed at large. Their duties were performed partly in the Circuit and partly in the Supreme Courts which took them away from their Circuits. They could sit in any other Circuit when requested. They were not confined to locality in performing their duties, nor was their juridiction confined to local interests.

A consideration of the functions of Judges renders their independence of local affairs still more obvious. The judiciary is one of three co-ordinate branches of the government, and represents simply the law by which the people have agreed to bind themselves. Its services are all performed on behalf of the State, the sovereignty from which all law emanates. The Judges receive their salary from the State Treasury, and the only object in having local courts is to bring justice home to the people. And, as any Judge may lawfully sit anywhere, there is nothing whatever to make it important that he should reside in one place rather than another. By both the civil

and the English law no Judge was allowed to sit in his own home or county at all to try criminal or civil cases. It is only during the present century that the restriction has been removed. As a matter of construction it was therefore concluded that the Constitution does not require residence.

It was further held that the Constitution does not permit the regularity of elections to the more important public offices to be tried by the courts. It is provided that in all cases where by the Constitution or by statute, the result is to be determined by the Board of State Canvassers, there shall be no judicial inquiry beyond their decision. It declares that "when the determination of the Board of State Canvassers is contested, the Legislature in joint convention, shall decide which person is elected." This provision was doubtless suggested by the difficulty of conducting an inquiry of this kind before the courts, and probably to discourage litigation in matters of election.

The result of these conclusions is that all the replications, except that relating to the residence, tender issues which are immaterial, because their determination cannot in any event change the Canvassers' certificate, which is in this controversy conclusive proof of the respondent's title to office. As the replications take no issue upon the existence of their determination, but distinctly admit it, and as there is no material issue of any kind tendered, the respondent is entitled to final judgment on the demurrer. He was also awarded costs against the relator.

---

## EDWIN R. SEELY vs. HENRY HOWARD.

Description of lands in declaration in ejectment.

Error to St. Clair Circuit.

*Opinion by* GRAVES, J.—Seely brought ejectment, and in his declaration describes the premises as " the following real estate or premises situated in the city of Port Huron, county of St. Clair, and being known and described as the undivided eighth