**In re Walter J. JOHNSON, Debtor.**

**No. 01–31306.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Feb. 15, 2002.

Joseph H. Luplow, Saginaw, MI, for Debtor.

David R. Shook, Flint, MI, for Chapter 7 Trustee.

### MEMORANDUM OPINION ON TRUSTEE'S OBJECTION TO EXEMPTION OF LIFE INSURANCE POLICIES AND STOCK BROKERAGE ACCOUNT

ARTHUR J. SPECTOR, Chief Judge.

The United States District Court for this district has jurisdiction to hear and to decide this contested matter pursuant to 28 U.S.C. § 1334(b). As permitted by 28 U.S.C. § 157(a), the District Court's jurisdiction was referred to this Court in E.D. Mich. LR 83.50.(a). This dispute is a core proceeding as delineated in 28 U.S.C. § 157(b)(2)(B), and therefore this Court can and will enter a final order disposing of it. In compliance with F.R.Bankr.P. 7052, what follows are the Court's findings of fact and conclusions of law.

The issues in this contested matter are whether the Debtor's State Farm Life Insurance policies are exempt under Michigan Compiled Laws § 500.2207 and whether the Debtor's Salomon Smith Barney brokerage account is exempt under Michigan Compiled Laws § 557.151.

On May 2, 2001, Walter J. Johnson filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On Schedule C, he listed his interest in a Salomon Smith Barney brokerage account and his interest in two State Farm Life Insurance policies as exempt from the estate by virtue of 11 U.S.C. § 522(b)(2). That section provides that property which is exempt from the claims of creditors under state law will be exempt under the Bankruptcy Code from property of the estate. CITE.

On July 3, 2001, Colleen Corcoran, the trustee of this estate, filed an objection to the Debtor's claims of exemption in the above-described property and a motion to require the Debtor to turnover the non-exempt property. With respect to the property involved in this matter, the sole allegations in the written objection are as follows: "Debtor lists personal property including an account at Soloman (sic) Smith Barney, two (2) life insurance policies." Objection, First ¶ 4 [the pleading has two paragraphs four and two paragraphs five]. What is wrong with the Debtor's listing of this property as exempt is stated as follows: "11 U.S.C. 522(b)(2) is not a basis for exemption of property, as such the Debtor fails to state a basis for the claimed exemptions." Objection, ¶ 7.

In his response to the trustee's objection to the exemptions, the Debtor asserted that his claim of exemption was based upon Michigan entireties law. Response to Objection, ¶ 7a. In his response to the trustee's motion for turnover, the Debtor alleged that the brokerage account was held jointly with his non-debtor spouse, Ruth Johnson. He also alleged that it was an "IRA account." Response to Turnover, ¶ 3.

This contested matter and related litigation were the subject of several hearings. Months went by. Finally, the objection was tried, partly on February 5 and the rest on February 12, 2002. The Debtor argued that Mich. Comp. Laws § 500.2207 provided for the exemption of the life insurance policies and that Mich. Comp. Laws § 557.151 provided for the exemption of the brokerage account. The trustee, as the party objecting to the allowance of the exemptions, bore the burden of showing that the exemptions were somehow improper. F.R.Bankr.P. 4003(c).

■ With regard to the insurance policies, the trustee argued that § 2207 exempts life insurance proceeds, which means the money payable upon the death of the insured (the so-called "death benefit"), not the cash surrender values of the policies. The Debtor points to the statute itself, which specifically refers to the cash

value as being exempt from the claims of creditors of the insured.

The Debtor is correct. With respect to life insurance policies procured by a husband on his own life and for the benefit of his wife, § 2207(1) says, in pertinent part, "[I]n case that any money shall become payable under the insurance, the same shall be payable to the person ... for whose benefit the insurance was procured ... free from all claims of the representatives of such husband ... or of any of his creditors." While this alone is a pretty thin reed, since "any money [that] shall become payable" certainly suggests proceeds upon the death of the insured, the statute continues as follows: "And the proceeds of any policy of life ... insurance, which is payable to the wife ... of the insured, **including the cash value thereof,** shall be exempt from execution or liability to any creditor of the insured." (Emphasis added). This latter provision specifically exempts the cash surrender value of a husband's life insurance policy which lists his wife as beneficiary.

Were additional support for this proposition necessary, this Court would rely upon dictum in *Equitable Life Assur. Society v. Hitchcock,* 270 Mich. 72, 258 N.W. 214 (1935). In that case, creditors of the deceased insured contested the life insurance proceeds with the decedent's children. Just before committing suicide, the insured transferred ownership of the policy from himself to his children. *Id.* at 75, 258 N.W. 214. He did this while "hopelessly insolvent." *Id.* The beneficiary of the policy was "the estate of the insured." *Id.* at 74, 258 N.W. 214. The Supreme Court agreed that the life insurance policy was "property" to which the insured's creditors could look for satisfaction. *Id.* at 77–78, 258 N.W. 214. However, it "limit[ed] the creditors' right to the recovery of the cash surrender value of the policy at the time of

the transfer." *Id.* at 78, 258 N.W. 214. In doing so, it explained as follows:

> We therefore believe that until the death of the insured nothing except the cash surrender value of an insurance policy, the actual value of what was transferred, is property within the meaning of the [fraudulent transfer] statute ... and that the proper rule is to limit creditors to a recovery of the cash surrender value of the policy at the time of the transfer....
>
> If the policy in the instant case had a cash surrender value at the time of the transfer, the proceeds of the policy, to the extent of such cash value, **would not have been exempt from attacks of creditors of the insured under 3 Comp. Laws 1929, § 12451.**

*Id.* at 78–79, 258 N.W. 214. (Citations omitted) (emphasis added). The statute cited above is identical in all material respects to the current § 2207. Based on this excerpt, one would naturally think that if the Supreme Court had this case, it would rule for the trustee. But the Court distinguished the facts before it from the typical case, such as the one at bench here.

The Supreme Court explained that the reason the insurance policy in *Hitchcock* would not have been exempt before the insured transferred the policy to his children was because the policy listed his estate, and not his wife (or children) as beneficiaries and the statute exempts the cash value of only those life insurance policies in which the wife (and/or children) are listed as beneficiaries. *Id.* at 80–81, 258 N.W. 214 (citing *Ionia County Savings Bank v. McLean,* 84 Mich. 625, 48 N.W. 159 (1891)). In the usual case, therefore, such as this one, where the husband insures his own life and lists his wife as the beneficiary upon his death, the proceeds of the policy "including the cash value there-

of" are exempt from the claims of the insured's creditors.

■ The trustee's alternative argument is based on § 2209(1) of the Insurance Code, which states:

It shall be lawful for any married woman ..., in her name ..., to cause to be insured for her sole use, the life of her husband ...; and in case of her surviving her husband, ... the sum or net amount of the policy of insurance due and payable by the terms of the insurance, shall be payable to her, to and for her own use, free from the claims of the representatives of her husband ... or of any of his creditors, **but such exemption shall not apply where the amount of premium annually paid shall exceed the sum of $300.00.**

Mich. Comp. Laws § 500.2209(1) (emphasis added). Since the annual premiums for the life insurance policies at issue in this case exceed $300, the trustee reasons, § 2209(1) precludes the Debtor from exempting the policies.

There are at least three flaws in this argument. First, the Debtor's exemption is not based on § 2209(1). If we were presented with a case in which the Debtor's wife had filed for bankruptcy relief and attempted to invoke this provision, then the $300 premium limit might be relevant.[1] But we are not, and it is not.

Second, § 2209(1) pertains only to death benefits payable under a life insurance policy. At issue here is the exemptibility of such a policy's cash value.

Third, the $300 limitation in § 2209(1) may very well be unconstitutional. Michigan's Constitution provides:

The disabilities of coverture as to property are abolished. The real and personal estate of every woman acquired before marriage and all real and personal property to which she may afterwards become entitled shall be and remain the estate and property of such woman, **and shall not be liable for the debts, obligations or engagements of her husband,** and may be dealt with and disposed of by her as is she were unmarried.

Mich. Const.1963, art. X, § 1 (emphasis added). The effect of § 2209(1)'s $300 ceiling would seem to deny this constitutional protection in cases involving policies which exceed the statutory limit. If that is the case, of course, the legislature lacks such authority. *See, e.g., Township of Dearborn v. Dail,* 334 Mich. 673, 680, 55 N.W.2d 201 (1952) (If "[t]he conflict between the statute and ... provisions [in Michigan's Constitution are] ... clear and inevitable[,] ... we [will] strike down [the] ... statute as unconstitutional.").

For these reasons, the trustee's reliance on § 2209(1) is misplaced.

■ With regard to the stock brokerage account, the only grounds the Debtor offered to sustain the validity of his exemption was that the account was an individual retirement account (IRA) and/or that it was exempt under the law of tenancy by the entireties. Unfortunately, it plainly is not an IRA. Nor is it a joint account. The account is an individual account in the Debtor's own name. Since it is not an IRA, it is not exempt under Michigan law. *See* Mich. Comp. Laws 600.6023(1)(k) (which provides for IRAs to be exempt). The account was admitted into evidence and it clearly is an individual account held solely in the name of the Debtor. Although Mich. Comp. Laws § 557.151

---

1. Even under those circumstances, the statute would appear to be applicable only if the policy had been procured by the Debtor's wife. As noted earlier, it was Mr. Johnson who procured the policies at issue in this case.

makes stocks held in joint name by spouses exempt from the claims of the creditors of one of the spouses, that section clearly does not apply here. The trustee's objection to the allowance of this exemption is well taken.

Accordingly, the trustee may submit an order, consistent with this opinion, sustaining her objection to the allowance of the Debtor's exemption of the Salomon Smith Barney account, but denying her objection to the Debtor's exemption of the life insurance policies.